

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 8, 2017**

_____
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** § § | | |
| **Vera Frances Thomas,** § § | **Case No. 17-31060-hdh7** | |
| Debtor. § § | | |
| § | | |
| **Vera Frances Thomas,** § § § | | |
| Plaintiff, § § | | |
| v. § | **Adv. No. 17-03027-hdh** | |
| § **U.S. Department of Education,** § § | | |
| Defendant. § § | | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has seen a number of actions in which debtors are trying to discharge their student loans. Not all of them have been meritorious. Many, however, have drawn a great deal of sympathy from this Court. Some appeared to satisfy the plain language of the statute, which

merely requires that the debt, if excepted from discharge, would impose an "undue hardship" on the debtor and the debtor's dependents. Some would have satisfied the "totality of the circumstances" test adopted in other Circuits for determining whether the debt would impose an undue hardship. But none have satisfied the demanding standard adopted as controlling law in this Circuit. That is why, in fifteen years on the bench, the undersigned judge has never discharged a student loan over the objection of the lender. This case is no different.

On December 4, 2017, the Court held a trial on the *Complaint to Determine Undue Hardship Under 11 U.S.C. § 523(a)(8)* [Docket No. 1] (the "Complaint") filed by Vera Frances Thomas ("Ms. Thomas"). Through the Complaint, Ms. Thomas sought a determination that repayment of her student loans from the United States Department of Education (the "Department of Education") would impose an undue hardship and they may therefore be discharged under 11 U.S.C. § 523(a)(8).

The following are the Court's Findings of Fact and Conclusions of Law.[1] The Court has sympathy for Ms. Thomas's situation, but based on these Findings of Fact and Conclusions of Law, the Court determines that Ms. Thomas has not met her burden of showing undue hardship under the controlling standard in the Fifth Circuit for interpreting and applying 11 U.S.C. § 523(a)(8).

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding involves a core matter under 28 U.S.C. § 157(b)(2)(A) and (I), as the

---

[1] The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7052. Any Finding of Fact that more properly should be construed as a Conclusion of Law shall be considered as such, and *vice versa*.

adversary proceeding involves a determination as to the dischargeability of a particular debt. Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

## II.  FINDINGS OF FACT

The facts in this adversary case are not disputed. Ms. Thomas attended Thomas Nelson Community College during the Spring and Fall semesters of 2012. At the time, Ms. Thomas was fifty-seven years old. She financed a portion of these semesters through the William D. Ford Federal Direct Loan Program with the Department of Education. She obtained a loan of $3,500 on February 14, 2012, and another loan of $3,500 on September 21, 2012 (together, the "Loans").

The Loans with the Department of Education went into repayment status in December 2013. Ms. Thomas failed to make payments on the Loans as they became due and consequently was placed in default forbearance. She did make payments on the Loans in April 2014 in the amount of $41.24, and May 2014 in the amount of $41.61. These were the only payments made by Ms. Thomas on the Loans.

As of March 12, 2017, there was due and owing a principal sum of $7,110.87 and interest of $695.58. In total, Ms. Thomas's outstanding balance is $7,806.45, with interest accruing at $0.66 a day. Under an amortizing repayment plan, payments on the Loans would be approximately $77 a month. Ms. Thomas has never applied for a discharge with the Department of Education based on total disability, which would allow the Loans to be administratively discharged if Ms. Thomas could establish a disability and prove an inability to work any position. Nor has Ms. Thomas submitted an application for the Income Based Repayment Plan, which would allow Ms. Thomas to make payments of $0 per month as long as her income remains less than $15,930 a year. After 20 to 25 years, any balance on the student loans would be forgiven, but the amount of

debt forgiveness could have tax implications because it would likely be recognized as taxable income under current law.

Ms. Thomas is now sixty-two years of age. She was diagnosed with diabetes in the mid-1980s and suffers from diabetic neuropathy. Ms. Thomas has managed her condition ever since she was diagnosed, but in 2014, Ms. Thomas's condition worsened. As a result of the diabetic neuropathy, Ms. Thomas began suffering from its common yet debilitating symptoms: muscle weakness, pain, and numbness in her legs and feet after standing for extended periods of time. She continues to manage her condition through a charitable program at a local hospital, but the symptoms persist, and no cure for diabetic neuropathy currently exists.

Notwithstanding the two semesters at college, Ms. Thomas only has a high school degree. From 2004 until 2016, she was employed as a full-time customer service representative. Despite the diabetic neuropathy, she was able to maintain this employment due to its sedentary nature. In 2015, her reported income on her Statement of Financial Affairs was $22,880. In September 2016, she was terminated for violating company policy by wearing headphones and listening to music during her lunch break, and her income according to her Statement of Financial Affairs for that year was $16,812. Post termination, Ms. Thomas worked at three different jobs, but was unable to sustain employment due to her medical condition.

On March 24, 2017, Ms. Thomas filed a petition for Chapter 7 bankruptcy.[2] She has remained unemployed for nearly a year since January 2017. Ms. Thomas concedes that she is able to perform a full-time sedentary position and continues to seek employment, but so far, the search has been to no avail. She currently has no income—the only income listed in her Schedule I is approximately $194 per month in food stamps. Her vehicle listed in Schedule A has been

---

[2] Case No. 17-31060 [Docket No. 1].

repossessed. The value of her personal assets is only $1,225 according to her Schedule B. Schedule J listed her monthly living expenses at $640, which included a $200 monthly rent contribution to her boyfriend, but circumstances have changed. Ms. Thomas lost the support of her boyfriend, currently faces an eviction notice, and has been forced to find a new residence. She also does not qualify for Medicaid or Medicare.

### III.     CONCLUSIONS OF LAW

Ms. Thomas's Loans constitute "an educational . . . loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution" as provided by 11 U.S.C. § 523(a)(8)(A)(i). In order to discharge such a debt, debtors must show that the debt, if excepted from discharge, would impose an "undue hardship" on the debtor and the debtor's dependents.

"Undue hardship" is not defined by the Bankruptcy Code. However, this Court is bound by Fifth Circuit precedent requiring a debtor seeking an "undue hardship" discharge of student loans under section 523(a)(8) to show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*United States Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89, 91 (5th Cir. 2003) (citing *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)). This three-prong test is commonly referred to as the *Brunner* test and is the controlling law in this Circuit as construed in *Gerhardt*. Ms. Thomas has the burden of proof to show that all three prongs of the *Brunner* test have been met. *Kettler v. Great Lakes Higher Educ. Serving Corp. (In re*

5

*Kettler)*, 256 B.R. 719, 723 (Bankr. S.D. Tex. 2000).  If one prong of the *Brunner* test is not proven, student loans cannot be discharged under an "undue hardship" theory.

Under the first prong of *Brunner*, Ms. Thomas must establish that she cannot maintain a minimal standard of living for herself if she were forced to repay the Loans.  The first prong is satisfied if monthly expenses exceed monthly income.  *Gerhardt*, 348 F.3d at 92.  According to Ms. Thomas's schedules, her monthly expenses, $640, clearly exceed her monthly income, $194 (in food stamps).  It is also likely that her monthly expenses will increase in the immediate future; she lost the support of her boyfriend, and new living accommodations as a result of the notice of eviction could be financially burdensome.  Ms. Thomas has satisfied the first prong of the *Brunner* test.

The second prong of the *Brunner* test requires a showing of "additional circumstances," which encompasses circumstances that were not present at the time the debtor applied for the loans or have since been exacerbated.  *Id.* at 92.  In this Circuit, the second prong of the *Brunner* test is especially difficult to meet.  *See id.* ("This second aspect of the [*Brunner*] test is meant to be a 'demanding requirement.'") (quoting *Brightful v. Pa. Higher Educ. Assistance Agency* (*In re Brightful*), 267 F.3d 324, 328 (3d Cir. 2001)).  The Fifth Circuit has indicated that a showing of dire financial conditions is not enough—the circumstances must be outside the debtor's control and result in a "total incapacity" to pay debts now and into the future.  *Id*.

The Court notes the taxing nature of the "total incapacity" requirement adopted by *Gerhardt*.  Ms. Thomas conceded that she is unable to show she is completely incapable of any employment now or in the future, but urged the "total incapacity" showing is far too stringent, asking the Court to utilize a "realistic look" test in regards to the second prong of the *Brunner* test

6

(as implemented by *Gerhardt*).³  Ms. Thomas cited the Tenth Circuit's approach to the second prong of the *Brunner* test, whereby the court does take a "realistic look" at a debtor's financial circumstances and judges their prospects on "specific articulable facts, not unfounded optimism." *Educational Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1310 (10th Cir. 2004); *see also In re McMullin*, 316 B.R. 70, 78 (Bankr. E.D. La. 2004) (following *Polleys* and finding undue hardship where the debtor was gainfully employed as a truck driver, but suffered from debilitating and worsening medical conditions that limited future employment opportunities and earning potential). The court in *Polleys* stated, "although a permanent medical condition will certainly contribute to the unlikelihood of a debtor earning enough money to repay student loan debt, it is by no means necessary if the debtor's situation is already bleak."  356 F.3d at 1311.

*Gerhardt*, specifically in regards to "total incapacity," appears to be a very high hurdle for debtors to clear, and this Court is bound by Fifth Circuit precedent.  Ms. Thomas suggested that she does not meet the "total incapacity" standard as it is understood in *Gerhardt*, and this Court agrees.  Accordingly, the second prong of the *Brunner* test is not met.

The third prong of the *Brunner* test requires Ms. Thomas to have made good faith efforts to repay the Loans.  The overarching inquiry is "whether the debtor's default is the result of factors beyond his control."  *In re Gnahoua*, No. 14-5020, 2016 WL 1238831, at *2 (Bankr. N.D. Tex. Mar. 28, 2016).  Specifically, courts consider a debtor's "efforts to obtain employment, maximize income, and minimize expenses."  *Russ v. Tex. Guaranteed Student Loan Corp.*, (*In re Russ*), 365 B.R. 640, 645 (Bankr. N.D. Tex. 2007).

Here, evidence exists on both sides.  It appears that Ms. Thomas made good faith efforts to gain employment and thus maximize income.  Given the eviction, her age, and her health problems,

---

³ *Plaintiff's Trial Brief*, at 11 [Docket No. 13].

it also appears she made good faith efforts toward minimizing expenses. Conversely, she only made two payments on the Loans. She also never applied for a discharge with the Department of Education based on total disability, nor did she submit an application for the Income Based Repayment Plan. Other Circuits have considered the failure to take advantage of such income contingent repayment plans in determining a debtor's good faith efforts to repay educational loans. *Alderete v. Educational Credit Mgmt. Corp.* (*In re Alderete*), 412 F.3d 1200, 1206 (10th Cir. 2005); *see Tirch v. Pa. Higher Educ. Assistance Agency* (*In re Tirch*), 409 F.3d 677, 682 (6th Cir. 2005); *see Educational Credit Mgmt. Corp. v. Frushour* (*In re Frushour*), 433 F.3d 393, 402-03 (4th Cir. 2005). However, given that Ms. Thomas did not satisfy the second prong of the *Brunner* test, this Court does not need to make a finding regarding good faith in this case.

## IV.   **FINAL THOUGHTS**

Respectfully, and for the benefit of any reviewing court, this Court makes several observations. First, the *Gerhardt* test appears to the undersigned, and I suspect many other bankruptcy judges as well, an incredibly high burden, and a test harder to meet than the *Brunner* test due to the required finding of "total incapacity." For this specific reason—a necessary finding of "total incapacity"—this Court has not discharged a single student loan debt when the lender contested it.

Second, when considering a debtor's good faith efforts to repay, it is unclear in this Circuit what weight to give to the fact that a debtor, like Ms. Thomas, fails to participate in alternative repayment plans. This is most applicable in addressing the third prong of the *Brunner* test, and in this good faith analysis, most courts hold that such failure is only a factor to consider. The Fifth Circuit, as far as this Court can tell, has not ruled on the issue nor suggested a route for bankruptcy courts to follow.

As student loan discharge litigation appears to be an increasingly common aspect of a large number of consumer bankruptcy cases, guidance on the standard to apply, as well as the role of alternative repayment plans in the good faith analysis, would greatly aid bankruptcy courts in their decisions on these matters. Until then, this Court is still bound by the precedent established in *Gerhardt*. The Court sympathizes with Ms. Thomas and her situation, but Ms. Thomas did not meet the evidentiary burden to establish an "undue hardship" as this Court understands it to be in the Fifth Circuit. Therefore, Ms. Thomas's education loans cannot be discharged under 11 U.S.C. § 523(a)(8).

### End of Findings of Fact and Conclusions of Law ###